The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit, Oye Oye Oye. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their judgment before the Court is now sitting. I say the United States and this Honorable Court. You may be seated. Good morning. Welcome to the Fourth Circuit. Our first case is 24-1898 and we'll hear from Mr. Newell. May it please the Court. Here the, this is Michael Newell, of course, for the appellants. The District Court confirmed what the appellees themselves called provisional relief. Interim award that under the governing arbitration rules cannot prejudice subsequent merit proceedings or it requires unanimous party consent to become final. Here no such consent took place and therefore this provisional relief does not meet the standard for a final binding award. Moreover, and what ties into the subsequent arguments, the petition was filed 260 days after the three-year statute of limitations. And finally, of course, the Dutch orders that are sought to be enforced in North Carolina don't have a money judgment that would meet the North Carolina statute. So first we would, of course, go back to the argument that this is not binding. There are different steps that could have taken place to create a binding award. But here it's already been conceded that what was sought was provisional relief. And that is exactly what was achieved was provisional relief. I agree that it's labeled provisional relief, but like what's your authority for the proposition that it's not nonetheless binding? I mean, so you said the arbitration award is not binding because it is subject to modification. What is your authority for the proposition that it's subject to modification? I did not see that in the NAI rules. So going to address the point at the outset, the provisional relief that was sought, there is a mechanism for them to seek a binding award at the outset. So I would say the- The mechanisms go to court. What is that? Sorry. So at the outset, they could have sought, and let me make sure I say this correctly, a decision on the merits. All right. At the unanimous request of the parties, they could have sought a decision on the merits or converted the decision from provisional relief to a decision on the merits. So the very mechanism in the court that it was being originally arbitrated, they could have sought to convert this provisional relief to a decision on the merits. You keep using the words decision on the merits. That's the magical words. Aren't the magical words binding on the parties? Isn't that the magical words? Right. And why? Let me just give you an example. Why isn't, say, a preliminary injunction obviously binding on the parties? A preliminary- And why isn't this basically a preliminary injunction? Well, we would argue that it's separate from a preliminary injunction, and that is one of the things that makes this difficult to parse through, but we would say that the different statutes and rules assist us in making the determination of what's the correct procedure to achieve the outcome they sought. The only authority I can find is Article 35 of the Dutch NAI rules. It says it describes arbitration tribunal's power to grant immediately enforceable provisional relief. Is there any other authority than that rule? Well, in that rule where they say they can enforce the judgment, which would hold for enforcing the judgment in the Netherlands essentially, does not create that same mechanism for them to use that same argument to create a binding decision for purposes of the New York Convention. So recognizing what you're saying about it being enforceable, however, that arbitration distinction could be made at any point by a separate arbitral court. It could be enforceable at a separate point, but the United States has addressed this in allowing for the argument that it must be binding, and the different aspects of binding are controlled also by that same 35 and 36. This is done by treaty. It's enforceable in the Netherlands, and by treaty, it's enforceable in the Netherlands, it's enforceable in the United States. Well, we would argue going beyond just this part of the argument that they also exceeded the statute of limitations and the enforceability based on the North Carolina statute does not matter. Well, as to the statute of limitations, what are we going to do with Judge Russell's case, which is a public authority that says it's a made file? I don't necessarily agree with it, but we've got that case working us in the eye. Right. I was looking at that case as well. I think we also have other precedents that address this through your statute of limitations. From other circuits, right? From other circuits, that's right. Well, that doesn't help with Judge Floyd's question. You're correct that it is all separate circuits, but I do think the arguments in them are helpful in distinguishing the differences. Okay. Help me complete the following sentence. Despite the fact that this panel is 100 percent bound by Sverdrup, we can nonetheless reach a different conclusion under this statute because? Sverdrup. What is the reason that I would say? Sverdrup addresses Chapter 1. So it's a different statute. Okay. Whereas C-Transport is more on point with addressing the international treaty. Okay. But once you point out it's a different statute, I'm going to point out that that statute is worded not literally the same, but extremely similarly to this statute, right? It's similar. It is similar. It's really, really. Again, it's not verbatim, but it is extremely similarly worded, right? Well, Chapter 2 states, within three years after an arbitral award falling under the convention is made, any party to the arbitration may apply. We would say that, of course, that three years establishes a temporal boundary, and it specifically ties the awards falling under the convention. It's a treaty implementation provision. It's not just a procedural rule. So the wording, especially when we're getting down to the points of parsing, may versus shall versus must, we still have to look at the legislative intent. If it wanted to account for three or four years or five years, there has to be, just as a legislative intent applies, some statute, some temporal boundary, and we run the risk of just making it superfluous that we have a three-year statute as mentioned within this. I mean, the court in Sverdrup seemed to acknowledge that, that they were making the statute of limitations superfluous and nonexistent in that statute. The Supreme Court in Cortes, Byrd, Chip, since then, has said we shouldn't rely on the may-must distinction in the FAA, not in this particular context. They were talking about something else. But does that give you any help in arguing why we should maybe be more cautious? I think we should be more cautious because we also have mechanisms in place within that three-year statute that could essentially stay that time period so it could still meet that three-year statute of limitations, all of which is in C-Transport, which describes how the proper mechanism for meeting your statute, which wouldn't apply to Chapter 1. In Chapter 1, you wouldn't have the same sorts of hurdles because it refers to domestic awards. But imagine in Chapter 2, dealing with international treaties, there needs to be some mechanism that controls the proper procedure to both meet the statute and make sure the judgments that are still being determined overseas can stay their course as well. Well, aren't you going to catch 22? It really doesn't matter about the federal arbitration, about the enforceability that way. Doesn't the North Carolina statute catch you either way? There's no statute of limitations. It says that the statute is broad enough to say that these arbitration awards like this one can be enforced. I mean, aren't you kind of caught between a rock and a hard place? I'm not sure I heard all of that. Well, I'm sorry. Aren't you kind of caught between a rock and a hard place? It doesn't make any difference arguing about the federal side of this. The North Carolina statute is broad enough and comprehensive enough to catch you, and there's no statute of limitations in that particular enforcement statute. Well, going to the North Carolina statute as well, and, of course, you've seen the brief, it would require a judgment that grants or denies a sum of money, whereas what is being relied on here simply is still the arbitral award, which the North Carolina statute specifically says the arbitral award is the award. How did it not grant all of the relief in the arbitral award? I mean, the court in the Netherlands granted enforcement of the arbitral award, attached the award, saying, like, this is what we are granting a judgment on. I mean, is your argument that the court needed to actually specify the amount in its document rather than attaching a document and saying that's the amount that there's a judgment in? Senator, what's your distinction there? That would be part of the distinction. So what in the North Carolina law tells me that you can't, the court can't say we're entering a judgment as reflected in the attached? Like, what in the North Carolina statute says, no, you have to put the dollar amount, like, in a different spot in the judgment? I'm sorry. I would argue that the North Carolina statute doesn't say the version of what you just said either. I agree with that. But what's your, how does it support you? Well, because the proceedings that we're referring to don't go as far as to say that this award specifically attaches the award, yes. But there are still proceedings that are taking place to, where these things can still be changed, essentially. It's not, if they want to make a decision on the merits. Didn't it go all the way up to the, like, highest court in the country? I agree. I mean, how could that be changed now? Well, what I'm saying is the arbitral award and the things that take place in the Netherlands and the Dutch courts are separate and apart from this, also have other mechanisms, decisions on the merits, or merits-based decisions that did not take place in getting the provisional award. So this goes back to your argument why you don't think the arbitration order is binding. Yeah, provisional relief. But now we're talking about the court, like the Rottenham Court's ruling. Why isn't that binding? Well, what they will cite doesn't reference provisional awards. Let me say this correctly. They have final awards that are discussed in Rottenham, final awards seeking provisional relief as opposed to provisional awards seeking urgent relief. So it's just distinguished in general that the types of provisional that we're talking about, as opposed to the award and the, they don't have, they have provisional relief now. They didn't get a final award, as is distinguished from the cases that they have cited in Rottenham. So the final award is different than a provisional relief, essentially. And that affects the application of the North Carolina statute how? Well, the North Carolina statute, still going back to it, specifically states a judgment of a foreign court confirming or setting aside an arbitral award could be covered. But in this case, arbitral awards themselves are not covered. And that's the only thing that's been established is the arbitral award. Nothing beyond that original arbitral award is what's being discussed and what has already been adjudicated there through the arbitration process. So the distinction would be an arbitral award versus a money judgment. All right. So we're at about the last 25 seconds here. So if there's each one of these items independently, specifically the statute of limitations, I understand that argument of May, but I believe the legislative intent was clear to set a boundary of three years for that filing. And thank you for your time. Thank you, counsel. We'll hear from counsel for appellee. Good morning, Your Honors. My name is Jeff Olenek. I'm here today representing the appellees together with Kate Cadiz. And we represent the appellees who are insolvency practitioners in the Netherlands. And they have been assigned the practitioners to rehabilitate Conservatrix. Conservatrix is an insurance company. It sells primarily burial and life insurance. That company became insolvent. That resulted in arbitral proceedings that ended with an award against Mr. Lindberg, Appellant Lindberg, and the other four companies he represents, owns, or controls, requiring them to put money back in, to put 150 million euros into reserves to make that solvent, to meet the requirements of the Dutch National Bank of being solvent 135% of what's needed in order to pay the claims. What has happened since then is they've now gone on a course of now going on six years to try to enforce that award. We come here today to ask this court to affirm the award, or affirm the judgment and the rulings of Judge Eagles in the district court in the Middle District of North Carolina, that one, that award is binding. Two, it's not barred by the statute of limitations. And to get Judge Floyd's point, sort of in any way, it would be enforceable under the North Carolina Foreign Judgment Recognition Act. So I have a question about the district court's judgment that I am genuinely confused by. Yes, sir. So you asked the district court to confirm the arbitral award under both federal and state law, correct? We did. Like a two-count petition? Correct. Okay. So now I'm looking at the district court's order. Which ground did she confirm under? Your Honor, I should have brought my joint opinion. I will represent to you that the judgment does not actually specify whether this is confirmed under federal law, state law, or both. And I'll accept that representation. Why isn't that a problem? Why is it that a judgment that the- Well, let me just give you an example. But under SEMTAC, the Supreme Court's decision in SEMTAC would say, if the award was confirmed under federal law, its preclusive effect is determined by federal law. But if it was confirmed under state law, SEMTAC says the preclusive effect of that judgment is determined by North Carolina state law. So in order to decide the preclusive effect of this judgment, I have to know if it was confirmed under federal or state law. And based on the district court's order, I don't know which it was. Why isn't that a problem is the question, I guess. Well, I did understand the question, Your Honor. And I think then the preclusive effect of federal law, we'd ask that it be affirmed on the federal grounds. Well, no, but I mean, like, so literally now you have a judgment. You want to go around enforcing your judgment and to decide the- So if you take it to a future court and say, give a preclusive effect to this judgment, that court, predictably enough, might have a question, whose preclusion law do I apply? Now, like, maybe nothing really is at stake in this in most situations, but, like, there may be differences between North Carolina and federal preclusion law. Your Honor, we have not looked at that, but it seems like we have a judgment for what Judge Eagles determined, 150 million euros becomes $167 million U.S. with the federal rate of interest. So I think that would determine what the judgment would be that we would try to enforce. I mean, she says the respondents have not established any ground for refusal to confirm the award under the FAA and the convention, and she doesn't address state law at all in that opinion. Why isn't the easy answer this was under federal law? And that's what you said. I think we do it under federal law. So then what was the district court's resolution of the state law request? Well, the court, I know the court denied them. There was a motion to dismiss the state law request that the district court denied and basically said because I think it's wrong. Again, maybe nothing fundamentally turns on this, but it was a real question I had when I read. I was like, I literally, you asked for confirmation. So, well, I'll take you to the thing that actually motivated this question. The question was whether or not we could just say it's fine under state law and thus not decide if it's fine under federal law because, I mean, here's the problem in a nutshell. You have a decision that strongly implies you're right, but it is about a different statute. And I read that decision, and a lot has changed about how we interpret statutes in the intervening years. And when I read that decision, it looks nothing at all like how we interpret statutes now. And I realize that it's completely binding about its interpretation of that statute. But the hard question for me is whether a court that interprets a different statute as meaning X binds us to construe this statute as meaning X, even though it has almost nothing to do with how courts construe statutes in 2025. Your Honor, binding on the what I call statute of limitations, may versus must?  Well, but it's a different statute. That case involves a different statute, right? Right, a different statute. Okay. And as you point out, Your Honor, that is the controlling decision. I call it sever drop. It's a controlling decision here. Well, it's not literally controlling because it doesn't actually involve this statute. To me, this is basically a question about a conflict between statutory interpretation methodologies and stare decisis. And I just mean genuinely when I say I think this is like a really hard question. And I'm asking for your thoughts on that. Well, Your Honor, it is the same statute. It's the FAA. It's Chapter 1 versus Chapter 2. It's a different provision. It's not the same. Chapter 1 versus Chapter 2. Sure, and there is a presumption that similarly worded provisions of the same statute mean the same thing. But it is a presumption. It is not an absolute categorical rule. And this case doesn't involve literally the same statutory section at issue in that previous case, right? Right, but you cited the law that says you're supposed to read consistently within the same statute. Right, because that's a principle of statutory interpretation. Right. But another principle of statutory interpretation is that we read words in accordance with their plain meaning. And I think that decision does not read words in accordance with its plain meaning. And the current rules of statutory interpretation says we don't do a free-form purpose inquiry when the text is clear. But that decision jumps to a really free-form purpose inquiry. And we're really skeptical about legislative history. And that opinion relies on legislative history pretty heavily, as I recall. So, like, it's just not the way we interpret federal statutes now at all. Right. But under Hoffman v. Hunt, Your Honor, and I think you've acknowledged that's binding law. It's binding law about what that section means. I agree 100%. I agree 100% that if this case arose under the same statute as that case, the same particular statute as that case, it would be 100% binding on us. But this case doesn't. And I mean this genuinely. I think that's a really hard question. And I'm trying to figure out what the right answer to that question is. And I'm asking other than just asserting that we're absolutely bound by it, which I do not buy because it's a different statute. I don't think we're literally 100% bound by it. Your Honor, as I read Hunt v. Hoffman and statutory construction consistent language in the same statute, I think that's where you end up until you get a split. Well, that certainly has, you know, that's guidance, appropriate guidance that we follow when we're one opinion is interpreting language, right? And the same language is used elsewhere, similar language. It seemed to me that it acknowledges that may and must are different. But the reasoning, like the reason for the decision seemed entirely based on the policy and legislative history underlying the domestic enforcement statute, right? The court was saying there's all these other ways you can enforce arbitration awards domestically that don't have time limits. So, like, it makes no sense to have a time limit, so we're going to ignore the time limit that Congress wrote. It seems to me that reasoning may not apply here because we're talking about a different, a three-year time limit that has a different legislative history, right? The convention came later. That part of the FAA came later. And those policy reasons don't apply here because you have laws like North Carolina's where you can summarily enforce a judgment on an arbitration award from a foreign country. So I was having trouble applying the reasoning of Sverdrup to this statute. But what's your argument for why we should do that? I'd go back to what Sverdrup said, which is it would be futile, it would be pointless to have this whole process, the whole point of the FAA and the whole point of the arbitration process, enforcement of awards, is it's faster, quicker, cheaper, easier, you get it done. Well, that made some, you know, charitably, maybe that made some sense in Sverdrup that it was a one-year statute of limitations. It's very short. And the only way to enforce arbitral awards domestically was otherwise was to file a suit at law, right? A suit on a contract, which is going to take longer and all of this. And that seemed to bother the court. But here we have a three-year statute of limitations, and we have ways to enforce arbitral awards or judgments on them very quickly through state law, like we have with the North Carolina money judgment statute. And so those reasons didn't seem to apply here if we're in a hypothetical world where this is how we interpret statutes. But if you look at the legislative history on the New York Convention, Chapter 2 of the FAA, it talks about why there is a three-year, because of the process of what it takes to first try to enforce it in that jurisdiction. Right, because they're thinking you're going to enforce it at home and then try to take that internationally. Very different than Section 9, isn't it? It is different, and that's why the statute of limitations is longer, Your Honor. And so I thought that was a point you were making is why couldn't you do it quicker? Well, they recognize that when you're bringing over a foreign arbitration award, it's going to take longer to get here when you first try to enforce there and then have to come here and translate. Right, right. And I guess, from my point of view, if we're going to follow sort of the reasoning of SFERDRA, I mean, that's the reasoning. It's policy-based. And it doesn't seem to apply one-to-one in our context, even though the words are similar. That's, you know, it seems like you maybe agree with that, but you think we're still bound by it. Yes, I think you're directed by it, whether you're bound by it, since it is a difference. It's 207 versus Chapter 9 or Section 9 of Chapter 1. Yes, it's different. But I think that reasoning does apply here. Okay. How about this question? Yes, Your Honor. I understand that courts have agreed with SFERDRA about the statutory provision that SFERDRA construed. Has any circuit held that Section 207's time limit is permissive? Or would we be the first circuit to hold that Section 207's time limit is permissive? I think you'd be the first. So we should follow a decision that, just to walk through it, we should follow a decision that employs interpretive methodologies that no longer are employed, that is itself the subject of an already existing circuit split, to create a new circuit split about a different statutory provision. That's the ask. Well, the circuit split, so the 6th and the 8th, Your Honor. No, about this statutory provision. We'd be creating a brand-new circuit split about this provision. Yes, you'd create a circuit. Right now there is no circuit split. So, right, there isn't one, and we'd create one that doesn't currently exist. Right. There's a second circuit in C-Transport. What happens when circuit splits get created with a fair amount of frequency? They go up. And what do you think would be the outcome of this case under current interpretive methods? I won't comment. Well, I think I know where you're going, Your Honor. So we should create a new circuit split that might result in us getting reversed? I don't think you'd be reversed, and I don't think it's creating a circuit split. Or you have two circuits with a split, and what I've seen, Your Honor, is it's when you get three or four or five circuits going different directions, going to the Supreme Court. I haven't seen many. Can I ask you? Yes. On the fundamental question about the may. Yeah. I really genuinely, when I read these cases for the first time, did not understand what the apparent dilemma was about may versus shall. Because the statute says that you may file a petition within three years, right? Correct. Is anyone ever required to file a petition to confirm an arbitration award? Under the FAA? Ever. Like, does anyone have to file a petition? You could just get an arbitration award, and the other side pays you, and you both go about your lives, right, without going to court. Right. And so why isn't the obvious reason the may there is to say, if you want to confirm your arbitration award, you have to ask within three years, which eliminates any apparent distinction between may and shall. The may is an authorization to do something, and the implicit sort of other side of it is, and if you don't do it within three years, you may not do it thereafter. That, to me, seems just as a matter of plain text what this statute obviously means. Your Honor, that was a question I somewhat expected. Right. And I think the may means just that you may do it within one year under Chapter 1, three years under Chapter 2, and you may do it. Well, no, it turns out you're reading the statute to say you may do it any old time you want. I was going to, Your Honor, what I was going to say is may, and any time if you do the Chapter 1 domestic under may, you get one year. Under Chapter 2, you get three. Beyond that, what you have, and you may, and nobody has a defense to it. The loser of the arbitration war can't complain. They don't have a defense. After that, I'd suggest that after that, they do have, if you didn't take advantage of the three years, you have a laches or a Sapo argument, if they didn't pursue it. Let's go back to your North Carolina dilemma for a minute. Yes, Your Honor. I'm not sure this is correct, so I'm just asking. There is this old adage that an appellate court can affirm a lower court's judgment for any ground found in the record. Was the North Carolina statute also argued before Judge Eagles? Yes, it was, Your Honor. So both statutes were. Yeah, the North Carolina Foreign Judgment Recognition Act. Now, I don't know, and what I don't know is this part. Certainly, if there are facts in the record, the court could find facts to support the outcome the court came to in any way it wanted to. As to a legal principle, I'm not sure. But assume we can. Does that solve your problem, or does a remand solve your problem? I think it does solve the problem, Your Honor. It was before the court and Judge Eagles determined that under the Foreign Judgment Act, as Judge Rushing pointed out, the Court of Rotterdam's award attached the arbitral award. And so it is a court judgment enforcing an arbitral award, and it is entitled to enforcement under North Carolina. The only reason I'm pursuing that is because it heightens the question about, you know, do you really want to take a chance in the Supreme Court on this May issue? And I was trying to figure out a way that might avoid that. Right. Do I want to take a chance on that issue? No, I do not want to take a chance on that issue. Do you need, is there any reason for us, if we agree with your, hypothetically, if we agree with your reading of the North Carolina law and how it applies here, is a remand necessary for anything? I just, I'm legitimately not sure. Do we need to send it back to Judge Eagles for anything to, you know, enter a judgment on the North Carolina law or to clean that up in some way to make any additional findings, or could we, you know, could we just conclude that as a legal matter the North Carolina law is sufficient to support the judgment that she entered and leave it at that? Your Honor, I think it would be remand with instructions to enter an order with regard to, if that's where this court was going, on the North Carolina Act. Okay, but there's no, she doesn't need, there's no sort of further proceedings that need to happen? No, Your Honor. This is before the court as all on matters of law. There's no additional findings of fact. Let me sort of add a similar, do you believe that the district court has already resolved the North Carolina question? Yes, Your Honor. You do? Okay. I do. And you believe she did that when? I know she, I know the district court denied a motion to dismiss the North Carolina request to confirm, and I know, as Judge Rushing points out, the district court's order says they haven't identified any grounds to not confirm under the FAA. But I don't think that order says that about the North Carolina law, and I don't think the judgment the district court entered mentions the North Carolina law. So where do you think the district court resolved the North Carolina confirmation question? In her April 29th order. That's the denial of the motion to dismiss? And then a second one on August 8th, but not in the judgment on August 14th, Your Honor. The August 8th, that's the opinion that we've been quoting from during, where she talks about, the district court talks about Spheredrop. Is that, I just want, I'm just. No, April 29th is Spheredrop. Then they filed an amended motion to dismiss when I moved to confirm the awards. Okay. And there they changed gears and they asked the court to suspend, or the Eurocard decision said suspend it, subject to proceedings on the merits. Merits proceedings.  One other point that I think we've gone by, which is the binding part of it, Judge Floyd, you're right. The NAI, it says in paragraph 46 that awards are enforceable on the day, they're binding enforceable on the day they were made. Provision 35, section 35 says that they are immediately enforceable. And then provision 36 says that those rules apply to both arbitral, both summary and merits arbitral proceedings. So that's how you get there just on the first question of the binding. It doesn't seem like the court has made questions about that. But there's no doubt that it is binding. That's all confirmed by the court of Rotterdam that says this is binding today. So unless the court has other questions for me. Thank you, counsel. We'll hear from Mr. Newell on rebuttal. Thank you, Your Honor. Just to step back into that last point about Article 46 and binding, and here it refers to immediate enforceability in the Netherlands. Whereas for our purposes, the New York Convention is going to require some additional steps. That binding, just because it's enforceable, does not also automatically create a binding nature for the purposes of the New York Convention, which those steps are laid out to create a binding award, which we've already discussed. We would say that Article 46 does not cover specifically what we're talking about here. Going back to when we were talking about the circuit splits, or just to solve, you know, putting a button on that, as you already referenced, I believe it's Second Circuit, First Circuit, Ninth Circuit, all have made the determination that sea transport is what creates the rule for Chapter 2, which is that issue here. I do think the plain meaning is the best reading of that statute within three years. And the continued dispute over may, shall, must, as discussed in the Court, just continues to create a system of more confusion, whereas we have the opportunity to establish a streamlined version of three years means three years. Well, we actually don't have the ability to do that because if we agree with you, in contrast, we'll be saying that almost identically worded provisions of the same statute mean different things because we don't have the authority to overrule Sparadrap's construction of the statute at issue before the Court. So then we'd be in a world in which may sometimes means must and sometimes doesn't mean may. I'll state it even more, that in the world of confirming arbitration agreements, may sometimes means must and sometimes doesn't mean must. I mean, that seems like it would create confusion too. Yes, Your Honor, but the greater confusion would be three years or four years or five years or some indefinite amount of years when it was clear that the intent was for three years. But if you're erring on the side of what establishes a more clear boundary, the temporal boundary of three years is much more clear than just the word may or the word must or the word shall or it can go on and on. So let's see. As I said, the legislative intent also appeared to be clear here. We'll make sure I hit the respond to those points. Also, with that three-year statute, which was already referenced, it provides more time, obviously, than a one-year statute. And we also know the mechanism for if you're going to go outside the bounds of that three-year statute, you have the ability to still file and come back to that at a later date. So it's not as if that three-year statute, there's no process that the appellees could have undertook. They just decided not to go that route as outlined in C-Transport. So those things were available to them. They didn't take place. Likewise, when we speak about binding, which was our first argument, there were avenues to create a binding award that just were not sought. The provisional relief can be requested unilaterally, essentially, whereas when you want to get a decision on the merits, it requires unanimous consent, which would have been the easiest way for them to get that binding award. That didn't take place either. So there were mechanisms in place to meet the three-year statute to also get a binding award, but neither one of those things took place. So as a result, the binding argument would still hold. The three-year statute of limitations would still hold. Not to mention, this is not three years in one day. This is 260 days past the three-year statute of limitations. And clearly the appellees were aware of the statute of limitations based on the arguments that they made to try to slide in a tolling argument because they are aware that this statute exists. So last, going back to the NC Act on the money judgment, we would continue to argue that the North Carolina requires a judgment that grants or denies a recovery or a sum of money. I recognize the Court's questions about the arbitration award, but I think it's quite clear that it contemplates arbitration awards and says that it does not cover arbitration awards. So we would say that absent a judgment of a money order, it still does not meet those requirements. Unless the Court has any further questions. Thank you, Counsel. We appreciate both of your arguments. We'll come down and greet Counsel and then proceed with our next case.
judges: Allison J. Rushing, Toby J. Heytens, Henry F. Floyd